**AMERICAN SURETY CO. OF NEW YORK v. WHEELING STRUCTURAL STEEL CO. et al.**

**No. 171.**

District Court, N. D. West Virginia.

Feb. 20, 1939.

Erskine, Palmer & Curl, of Wheeling, W. Va., for American Surety Co.

Schmidt, Hugus & Laas, of Wheeling, W. Va., for Wheeling Structural Steel Co.

Hall, Goodwin & Paul, W. F. Keefer, W. J. Cotton, Riley & Riley, and A. E. Bryant, all of Wheeling, W. Va., for laborers and materialmen.

BAKER, District Judge.

Prior to September 28, 1931, a contracting firm under the name of Pike & Cook Company, Inc., entered into a contract with the United States Government to erect a post office building in Louisville, Kentucky. They furnished the statutory bond under the Heard Act, 40 U.S.C.A. § 270. Pike & Cook Company, Inc., in turn entered into a contract with the Wheeling Structural Steel Company to furnish and erect the steel work in said building. The Wheeling Structural Steel Company in turn entered into a contract with the Detroit Steel Erection Company for the erection of the steel which was to be shipped by it to the post office job in Louisville. The contract between the Wheeling Structual Steel Company and Detroit Steel Erection Company required a bond to be given by the latter company in the sum of Thirty Thousand Dollars ($30,000), which said bond was duly given and among other provisions, incorporated the contract between Wheeling Structural Steel Company and Detroit Steel Erection Company by refer-

ence into the bond and also provided that: "If the principal shall faithfully perform the contract on his part, free and clear of all liens arising out of claims for labor and material entering into the construction", then the obligation to be void. The contract so by reference incorporated in the bond provided that the Detroit Steel Erection Company should furnish a bond "guaranteeing the completion of said erection work and the payment of all bills for water, power, light, and tools and for the payment of wages of workmen". The bond also provides that: "No suit shall be brought on this bond after the 2nd day of March, 1932". The American Surety Company of New York is the surety on said bond. On the 29th day of February, 1932, the Detroit Steel Erection Company and the American Surety Company of New York executed and delivered to Wheeling Structural Steel Company an indenture which in part provided that said parties "do hereby stipulate that the time within which suit may be brought on said bond is hereby extended to the 2nd day of May, 1932". On or about the first day of March, 1932, the Wheeling Structural Steel Company instituted an action of debt in the Circuit Court of Ohio County, West Virginia, upon said bond, upon which suit service was had upon the Surety Company, but not upon Detroit Steel Erection Company. On September 29, 1932, this suit was filed by the American Surety Company of New York against Wheeling Structural Steel Company and various persons who had furnished labor and material alleged to have gone into the construction of the Louisville Post Office Building, in which the plaintiff prays that the suit in the Circuit Court of Ohio County may be enjoined that all such material men and laborers may be made parties hereto and required to answer the bill of complaint; that an accounting may be had; and "that the claims of any and all persons alleging that the Detroit Steel Erection Company is indebted to them may be filed herein in order that it may be determined whether they are or are not liens which the said Wheeling Structural Steel Company or this plaintiff is under obligation to pay.

Various pleadings were filed which require no comment and on June 29, 1933, a special replication was filed by the plaintiff, American Surety Company of New York, in which it admits liability to various creditors of the Detroit Steel Erection Company for labor done and materials furnished on the building in question. These creditors are as follows: A. H. Bowman & Company, One Thousand Three Hundred Twenty-Five and 31/100 Dollars ($1,325.31); J. T. Wing & Company, Five Hundred Eighteen and 27/100 Dollars ($518.27); Mid-Continent Petroleum Company, Three Hundred Eight and 5/100 Dollars ($308.05); Manuel Leandros, Two Hundred Forty-Seven and 95/100 Dollars ($247.95); Campbell & Summerhayes Company, One Hundred Forty-Four and 60/100 Dollars ($144.60); Childers Electric & Paint Company, One Hundred Five Dollars ($105).

The defendant, Wheeling Structural Steel Company, seeks to recover the sum of Ten Thousand Five Hundred Twenty-Seven and 47/100 Dollars ($10,527.47) from the plaintiff, American Surety Company of New York, based upon the theory that Pike & Cook Company, Inc., the general contractors, refused to pay this amount under its contract with Wheeling Structural Steel Company, because Detroit Steel Erection Company had failed to pay for services performed and materials furnished and these creditors of Detroit Steel Erection Company had notified Pike & Cook Company, Inc., of their claims. The notices so served upon Pike & Cook Company, Inc., amounted to approximately Eight Thousand Dollars ($8,000). Pike & Cook Company, Inc., notified Wheeling Structural Steel Company of these claims, who in turn notified Detroit Steel Erection Company and the American Surety Company. Wheeling Structural Steel demanded that American Surety Company pay these claims and American Surety in turn suggested to Wheeling Structural Steel that it pay the claims out of funds which it had withheld under its contract with Detroit Steel Erection Company. This amount so withheld is in the sum of Twenty-four Hundred Fifty-One and 97/100 Dollars ($2,451.97). Neither of these courses was adopted, so that the entire matter continued in status quo, the Detroit Steel Erection Company owing various creditors, Pike & Cook owing Wheeling Structural Steel, and Wheeling Structural Steel owing Detroit Steel Erection Company when this suit was instituted for the purpose, among other things, of an accounting among these three corporations. Wheeling Structural Steel also claims an additional amount of Six Hundred Fifty-Two and 94/100 Dollars ($652.94) based upon the contention that they were forced

to expend that amount in completing the work that Pike & Cook should have performed under its contract.

The bond in question contains the usual provision assigning all monies due under the contract to the bonding company and under this assignment, American Surety Company is claiming not only the balance due under the contract, but an additional sum of Thirty-Seven Hundred Five and 27/100 Dollars ($3705.27), which it contends is the amount of damage sustained by Pike & Cook by reason of Wheeling Structural Steel's failure to ship the steel to Pike & Cook in sequence as provided in its contract.

Both parties to the controversy agree that the steel was not shipped in sequence and it is equally clear that by reason thereof, Pike & Cook was delayed in its work and was put to additional expense in handling the materials, storing the materials which could not be used upon arrival, etc. It has filed as an exhibit an itemized statement of its loss and expense in this respect and the witness, Van Slyke, testified to the items therein contained. Wheeling Structural Steel Company admits that the materials were not shipped in sequence, but claims that this change in the method of shipment was made at the suggestion of Mr. Pentecost, President of Detroit Steel Erection Company. While the evidence is conflicting on this point, it clearly preponderates in favor of the contention of the Wheeling Structural Steel Company and were this litigation solely between the Wheeling Structural Steel Company and Detroit Steel Erection, this claim for damages would have to be refused.

■ The American Surety Company, however, did not consent to this deviation from the contract and cannot be bound by an arrangement made between Detroit Steel Erection Company and Wheeling Structural Steel Company. Indeed, it is contended by American Surety Company that this mutual deviation from the contract releases it as surety on the Detroit Steel Erection Company's bond. This deviation from the contract, although substantial, was not, however, an amendment thereof based upon a valid consideration and, therefore, does not release the surety, but at the same time, in so far as the surety is concerned, it must be treated as a breach of contract on the part of the Wheeling Structural Steel Company. Wheeling Structural Steel also contends that when the materials were

so shipped to Louisville, they were very unskillfully handled by Pike & Cook Company, Inc., and that a large amount of the damage so claimed was caused by this mishandling. Although the testimony is such as would lead one to believe that such was the case, it is yet so vague and general that it will not support a finding.

The building was completed in February, 1933, and six (6) months later suit was instituted by certain creditors under the Heard law against Pike & Cook Company, Inc., and its surety under that law. The Heard law requires that a period of six (6) months shall elapse after the completion of a Government structure before suit can be instituted. Wheeling Structural Steel Company intervened in this suit and obtained judgment against Pike & Cook Company, Inc.; and one of the creditors of Detroit Steel Erection Company, to-wit, Thomas Elevator Operating Company also intervened and obtained judgment.

Additional parties intervened in the present suit as follows: Mid-Continent Petroleum Company on October 22, 1932; J. T. Wing & Company on October 22, 1932; Campbell & Summerhayes Company on October 22, 1932; Thomas Elevator Operating Company on October 24, 1932; Childers Electric & Paint Company on November 25, 1932; A. H. Bowman & Company on November 25, 1932; Manuel Leandros on April 11, 1933; Belknapp Hardware & Manufacturing Company on November 14, 1933; Linde Air Products Company on November 14, 1933; John A. Roabling's Sons Company on November 14, 1933; The Dix-Kelly Electric Company, Inc., on November 14, 1933; Dehler Brothers Company, Inc., on November 14, 1933; George F. Breitenstein on November 14, 1933; Karl Nussbaum on November 14, 1933; Standard Oil Company, Inc., in Kentucky, on November 22, 1933; Smith Brothers Hardware Company on November 22, 1933.

The A. H. Bowman & Company had formerly filed a suit in the Circuit Court of Ohio County, West Virginia, with an attachment or suggestion against the Wheeling Structural Steel Company, to which suggestion the Wheeling Structural Steel Company filed an answer denying that it was indebted in any amount to the Detroit Steel Erection Company.

■ The first question to be disposed of is that of the contractual limitation for

suit contained in the bond. There can be no doubt that such a stipulation in a contract is valid and binding and constitutes a defense to any suit based upon the contract after the date so specified. It is also true that such a defense need not be pleaded where it appears on the face of the instrument sued upon, but may be reached by demurrer. It is just as true, however, that such a stipulation may be waived. Indeed it was in this case expressly waived by the extension agreed upon with the Wheeling Structural Steel Company. Such provision can be impliedly waived as well as expressly waived and will be considered as having been waived when the party entitled to its protection acts in such manner as to be inconsistent with its desire to take advantage of the defense. In this case the American Surety Company of New York instituted this action in which it prayed that all claims against the Detroit Steel Erection Company might be marshalled and in effect invited all creditors of that company to come in and participate in the accounting among the three corporations principally involved. This is followed by the filing of the replication in which it goes so far as to admit liability to certain of the claimants. Certainly this conduct is a waiver of the contractual limitation contained in the bond. If it had been the position of the American Surety Company of New York that no claims could be made under the bond after the date of the contractual limitation, they should not have made the creditors of Detroit Steel Erection Company parties and could successfully have objected on that ground to their intervention in the suit.

The next issue is the claim of Wheeling Structural Steel Company growing out of the failure of Pike & Cook Company, Inc., to pay it under the contract. The testimony is that Pike & Cook Company, Inc., was regularly paying its creditors up until 1933 and its only reason for not paying Wheeling Structural Steel Company was the failure of Detroit Steel Erection Company to pay its creditors. Certainly this constitutes a breach of Detroit Steel Erection Company's covenant to "faithfully perform the contract". It may be argued that Wheeling Structural Steel Company should have taken steps to collect from Pike & Cook Company, Inc., and thereby have litigated the claims filed with that company as against Detroit Steel Erection Company. Wheeling Structural Steel Company was not under obligation to take this step. Detroit Steel Erection Company was under contract with it to faithfully perform such contract and to pay these accounts. Wheeling Structural Steel Company had the right to rely upon this contract and the bond given thereunder. Moreover, Pike & Cook Company, Inc., could have successfully defended such a suit and while Pike & Cook Company, Inc., was still solvent, this suit was brought on September 29, 1932, for the purpose of an accounting among all three parties and there was no reason that Wheeling Structural Steel Company should enter into any further litigation. Unfortunately, during the course of this litigation, Pike & Cook Company, Inc., became insolvent, so that one of the other two parties must suffer a loss. It seems equitable that this loss should fall upon the American Surety Company of New York in that it was primarily occasioned by the failure of Detroit Steel Erection Company, its principal, to fulfill its obligations. Nor is the American Surety Company of New York an innocent sufferer. It was notified at once when these claims were called to the attention of Wheeling Structural Steel Company. It had then an opportunity to protect itself by insisting that Detroit Steel Erection Company pay these creditors or by paying them itself. Its failure to take this step results in a two-fold loss in that it is now forced to pay what otherwise could have been recovered from Pike & Cook Company, Inc., as well as to pay creditors of Detroit Steel Erection Company. It may also be urged that Pike & Cook Company, Inc., was unjustified in withholding more than Ten Thousand Dollars ($10,000) when the claims filed with it amounted to approximately Eight Thousand Dollars ($8,000). The answer is that Pike & Cook Company, Inc., was acting as any reasonably prudent man would have acted under the circumstances. It had no means of knowing what further claims would be made and there was no duty on its part to ascertain what claims might be perfected under the Heard law and what claims might not. It was up to the American Surety Company of New York to protect itself. The only step taken was to notify Wheeling Structural Steel Company to pay these claims out of the balance due to Detroit Steel Erection Company. The amount remaining in the hands of Wheeling Structural Steel Company was not sufficient to meet the claims and Wheeling Structural Steel Company was under no

obligation either to ascertain the validity of the claims or to carry out the suggestion of the American Surety Company and pay them.

The finding must, therefore, be for the Wheeling Structural Steel Company in the amount claimed subject to, however, such valid counter claims as Detroit Steel Erection Company as principal and American Surety Company of New York as its assignee may be entitled.

■ As has been said before, there can be no doubt that Wheeling Structural Steel Company departed from the contract in the manner of shipment of the steel to be used in the construction and that this departure resulted in an expense to Detroit Steel Erection Company. For the reason hereinbefore stated, the American Surety Company of New York is in position to take advantage of this deviation from the contract, although the Detroit Steel Erection Company could not. The finding on this issue must, therefore, be for the American Surety Company. The allowance of the full amount of this claim may be somewhat inequitable, as there is convincing testimony that this damage might have been mitigated by Detroit Steel Erection Company. This testimony, however, is so general as to render it impossible to determine in what amount such mitigation might have been. The items of the claim based upon rental of certain machinery might also be open to question, but in the final analysis, this rental did increase the cost of the work and, therefore, cast an additional burden upon the Detroit Steel Erection Company and its surety. Indeed, one of the claims filed against Detroit Steel Erection Company is for this very rental. It would seem then that the allowance made in this respect should be in the amount of Three Thousand Five Hundred Eighty-Three and 87/100 Dollars ($3,583.-87), which is the amount claimed, less the items of overhead and profit. Wheeling Structural Steel Company also claims that it was necessary for Pike & Cook Company, Inc., to do certain work that was covered by the contract between Wheeling Structural Steel Company and Detroit Steel Erection Company. The record discloses no evidence concerning this work except bills rendered by Pike & Cook Company, Inc., to Wheeling Structural Steel Company. Upon the record, therefore, it is impossible to ascertain whether or not this work was so done by Pike & Cook Company, Inc., and whether or not it did come within the provisions of the contract between Wheeling Structural Steel Company and Detroit Steel Erection Company.

Wheeling Structural Steel Company also makes a charge against Detroit Steel Erection Company in the sum of One Hundred Ninety-Eight and 68/100 Dollars ($198.68), which it claims is a premium paid to Travelers Insurance Company for a policy covering contractors' liability and property damage. The contract between the two companies provides that Detroit Steel Erection Company shall obtain and pay for such a policy and this they failed to do. This claim, therefore, is allowed.

There remains but the question of the claims filed against Detroit Steel Erection Company by those who furnished either labor or materials.

■ It has been urged first that this bond was given for the sole protection of the Wheeling Structural Steel Company and that no other claims could be made thereunder; and second, that only such claims as come under the wording of the bond; to-wit, bills for "water, power, light and tools and for the payment of wages of workmen", or those who have perfected their lien under the Heard Act, 40 U.S.C. A. § 270, can be recognized. There is no doubt that at law Wheeling Structural Steel Company is the only party who could make claim under this bond. It is also true that in the earlier equity decisions the rights of other claimants were not recognized. Under the later equity decisions, however, the Courts are practically unanimous in the recognition of such claimants as donee beneficiaries and the finding must, therefore, be against the American Surety Company of New York in its first position.

■ The second contention is solved with much more difficulty. The bond provides that the work shall be done free and clear of all liens arising out of claims for labor and material. This being a government building, there could, of course, be no liens, so that if the bond means anything at all in this respect, it must contemplate such claims as would be provable under the Heard Act. Such a situation must have been in contemplation of the parties when the contract was entered into, as claims provable under the Heard Act, if left unpaid, would in turn result in the principal contractor refusing to pay Wheeling Structural Steel Company, its subcontractor. None of these claims were perfected under the Heard Act except

that of the Thomas Elevator Operating Company. The American Surety Company of New York, therefore, says, and with some force, that these claims not being perfected under the Heard Act are not liens any more than claims not reduced to mechanics' liens would be under a bond guaranteeing the performance of private construction. There is no doubt that this position would be sound were it not for the fact that the American Surety Company of New York lulled these creditors into a sense of security by making them parties to this cause and filing a replication in which it admitted liability to some of them. As hereinbefore stated, the work was completed in February, 1933, and six (6) months later, which was as soon as the action could be instituted, a suit was brought under the Heard Act. This brings us to August of 1933. The creditors then had six (6) months in which they might, under the law, intervene in that suit for the purpose of perfecting their claims. This would extend the time to February of 1934. The instant suit was brought on September 29, 1932, which was long before any claims could have been presented or prosecuted under the Heard Act, and on June 29, 1933, which was yet before the suit under the Heard Act had been instituted, the replication was filed admitting liability to certain of these claimants. Certainly in equity this was tantamount to saying to those creditors: "You need not incur the additional trouble and expense of perfecting your claims under the Heard Act, as we recognize their validity and are willing to meet the obligation." This then disposes of the claims of Mid-Continent Petroleum Company, J. T. Wing & Company, Campbell & Summerhayes Company, Thomas Elevator Operating Company, A. H. Bowman & Company, Manuel Leandros, and Childers Electric & Paint Company, which are hereby allowed. It might be added in passing that under the more recent decisions, all of these claims would have been provable under the Heard Act.

None of the claiming creditors in this case have any standing except as donee beneficiaries. As such donee beneficiaries, they have the same rights as they would have in a Court of law had they been named beneficiaries. Now if these claimants had been named beneficiaries and one or more had filed a suit on the bond in a Court of law, he, in his pleadings, would set forth the bond and services rendered which he claimed to come thereunder. The defending surety company could either have confessed judgment or have filed a plea denying liability. As to the creditors whose claims have been hereinbefore discussed, the filing of the replication herein was tantamount to a confession of judgment. As to those whose claims were not admitted by the replication, their position is here the same as it would have been in a Court of law in that they must prove that the work and materials which form the basis of their claim come strictly within the terms of the bond. In other words, these claims must be based upon bills for water, power, light and tools and for the payment of wages of workmen or must have been perfected under the Heard Act, which would be tantamount to becoming a lien. None of these claimants so perfected its lien and they must, therefore, come within the other provisions of the bond.

It must be determined what is meant by the word "tools" as used in the contract. It is inconceivable that it was in the minds of the parties that the bond should cover all such tools as the contractor might choose to buy during the course of this work. It is much more logical to assume that the word "tools", as used in the contract, meant such tools as might be covered by the Heard Act. Such tools as are unique in that they are only suitable for a particular project or such tools as are wholly depleted by use on a particular project are covered by a bond given under the Heard Act, but such tools as are for general usage and are purchased in contemplation of use not only on the particular project, but other future projects are not covered by such a bond. Indeed, the case of National Surety Company v. United States, 6 Cir., 228 F. 577, L.R.A. 1917A, 336 holds that even though by reason of the length of the job, tools intended for use in one location after another are completely worn out, their purchase is not covered by the bond.

There is nothing before the Court in proof of these claims other than the claims themselves and the itemized statements filed therewith.

It is true that there is a stipulation to the effect that the services set forth in certain claims were rendered to Detroit Steel Erection Company and that the items set forth in other claims were sold to De-

troit Steel Erection Company. This, however, is not an admission nor is there proof that these services were such as come within the contemplation of this bond or that the articles so sold to Detroit Steel Erection Company constitute tools within the contemplation of the bond. As the burden of proof is upon the claimants, the Court has no right to render a judgment based upon a study of the items set forth in the claims and his ideas as to what usages such items might have been put.

All claims, therefore, not hereinbefore allowed, may be rejected.

· Order may be prepared in conformity with this Memorandum. ·