## Fiumara *v.* American Surety Company of New York, Appellant.

Argued January 5, 1943. Before MAXEY, C. J.; DREW, LINN, STERN, PATTERSON, PARKER and STEARNE, JJ.

*Edward H. Cushman,* for appellant.

*William P. Cairo,* with him *Hepburn & Norris,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, March 22, 1943:

This is an appeal from the judgment entered by the court below after a trial without a jury. Appellant alleges that a contractor paid for materials furnished a sub-contractor *after the materialman had lost his right of action* on the contractor's bond by failing to institute suit thereon within the statutory year for such suit and that therefore such payment by the contractor was made too late to permit the contractor to recover the amount so paid from the surety or the sub-contractor's bond of indemnity. The limitation here invoked arises by reason of the provisions of the Miller Act, Sec. 2(b), 40 U. S. C. A. Sec. 270(b)[1] relating to performance bonds accompanying contracts for the construction, alteration and repairs of any public building or public works of the United States. The Comptroller General's certificate gives the date of the final settlement of the contract as July 29, 1938. Under the provisions of Section 3 of this Act[2] this date is conclusive on the parties.

---

[1] "Every suit instituted under this section shall be brought in the name of the United States for the use of the person suing, in the United States District Court for any district in which the contract was to be performed and executed and not elsewhere, irrespective of the amount in controversy in such suit, but no such suit shall be commenced after the expiration of one year after the date of final settlement of such contract. The United States shall not be liable for the payment of any costs or expenses of any such suit."

[2] "The Comptroller General is authorized and directed to furnish, to any person making application therefor who submits an affidavit that he has supplied labor or materials for such work and payment therefor has not been made or that he is being sued on any such bond, a certified copy of such bond and the contract for which it was given, which copy shall be prima facie evidence of the contents, execution, and delivery of the original, and, in case final settlement of such

The appellee takes the position that "in a prior suit in the Federal Court between the same parties on the same cause of action, the United States Circuit Court of Appeals (Second Circuit) adjudged the effect of such payment and the surety's liability therefor", and that its judgment is res adjudicata of the issue. The court below upheld this view.

Other issues arose in this protracted litigation,[3] all of which have been eliminated.

The facts are as follows: The United States entered into an agreement on September 23, 1937, with Bernard Fiumara, trading as the Delmar Construction Co. (hereinafter referred to as Fiumara), for the construction of additions to the sewage disposal plant of the Veterans Administration Facility, Long Island, New York. Fiumara as principal, and the United States Fidelity and Guaranty Co. as surety, delivered to the United States their bond conditioned for the payment of claims of all persons furnishing labor and materials in the prosecution of the work pursuant to the Miller Act. Fiumara engaged W. E. Foley and Bro. Inc. (hereinafter referred to as Foley), on October 14, 1937, to furnish certain materials and to do certain plumbing and mechanical work in connection with the construction of the additions, for the agreed price of $36,000. On October 19, 1937, Foley as principal, and the appellant, American Surety Company as surety, delivered to Fiumara their bond in the sum of $36,000. conditioned that "the principal shall faithfully perform the contract on its part, free and clear of all liens arising out of claims

contract has been made, a certified statement of the date of such settlement, which shall be conclusive as to such date upon the parties. Applicants shall pay for such certified copies and certified statements such fees as the Comptroller General fixes to cover the cost of preparation thereof."

[3] There were filed in this case five statements of claim and an equal number of affidavits of defense containing new matter and calling for replies. The record contains over 200 printed pages.

for labor and materials entering into the construction, and indemnify and save harmless the obligee from all loss, cost or damage which it may suffer by reason of the failure so to do."

Foley performed certain work under his subcontract, but on April 18, 1939, it withdrew from the project. The Veterans Administration Bureau accepted and approved the work done to that time, and during that time Foley was paid $21,000.86, leaving a balance of $14,999.14 for the unfinished work under the contract price. Foley, when it refused to further complete its subcontract, maintained that under its interpretation of the contract it did all the work it was obligated to perform and demanded the balance. Fiumara then completed the work in certain specifications under the subcontract at a cost to him of $14,963.35. In addition to this, Fiumara, on November 11, 1937, gave Warren Foundry & Pipe Corporation, its guarantee in writing to pay it for materials furnished to Foley for the project. The material furnished under this letter of guarantee amounted to $9,924.75. Foley also failed to pay Andrew Carlson & Sons, Inc. $475.60 for materials furnished to the project.[4]

The several contentions of the respective parties brought on a series of lawsuits in the Federal Court of New York and in our State Court, as follows: On October 21, 1938, Fiumara instituted this suit against the American Surety Company as surety on the subcontractor's bond of indemnity. The bond in express terms provided "that no suit shall be brought on this bond after the 19th day of April 1939", so that this suit was instituted within the period provided by the bond itself for the bringing of the action. However, up to and including the date of this action, no money had yet been paid out by Fiumara for the materials furnished to Foley.

---

[4] This was paid by appellant to appellee since the adjudication, without prejudice to the rights of the respective parties.

Foley, then, on November 19, 1938, brought suit under the Miller Act in the Federal Court of New York in the name of the United States of America for Foley's use against Fiumara and the United States Fidelity & Guaranty Co., surety,[5] on the payment bond furnished by Fiumara in connection with the principal contract of September 23, 1937. Fiumara filed a counterclaim against the subcontractor Foley, and a third-party complaint against the American Surety Company, surety on the subcontractor's performance bond, upon which this suit is based.

While these suits were pending the Warren Corporation, on April 14, 1939, brought suit in the Court of Common Pleas of Philadelphia against Fiumara on his guarantee.

This was the state of the record when the first of the cases was heard by Judge GALSTON, without a jury, in the United States District Court in New York on June 26, 1938.

The issues of the respective parties in that case appear from the opinions of Judge GALSTON [5] and the appellate court[6] to be these. Foley claimed that it performed all of the work that it was obliged to under the contract, and that having completed its contract that there was owing to it $14,999.14. Fiumara charged Foley "with two types of breach of contract: (1) refusing to do certain items of the work required by the terms of the contract, and (2) failure to pay . . . (the) materialmen from whom Foley obtained supplies and materials used on the project.[7] His "demand upon the American Surety Company" was "to pay these damages and losses."[8] The Surety Company denied "the material

[5] 28 F. Supp. 443
[6] 113 F. (2) 888
[7] 113 F. (2) 889
[8] 28 F. Supp. 444

allegations of breach and liability.[9] On the appeal "the argument" was "limited to the single issue of error in denying Fiumara affirmative recovery against Foley and his surety on account of a bill of some $9000 owed by Foley to Warren Foundry and Pipe Company which had supplied materials for work done by Foley."[10]

On July 25, 1939, Judge GALSTON dismissed the complaint,[11] the counterclaim and the third party complaint. On July 24, 1939, the day before this adjudication and before the entry of any judgments thereon, the Warren Company in Philadelphia recovered judgment against Fiumara on his guarantee for $10,203.67, being the full amount of the claim with interest. On this judgment an attachment execution was issued and on August 8, 1939, Fiumara paid $8500 to the Warren Company in full settlement of its claim.

On October 16, 1939, judgments were first entered in the United States Court in accordance with the adjudication of Judge GALSTON's dismissing Foley's claim against Fiumara and dismissing Fiumara's counterclaim against Foley and dismissing Fiumara's third party complaint against the American Surety Company.

Before the term of the District Court had expired, and while the judgment was still within the Court's control,[12] Fiumara moved the District Court "to amend the judgment entered October 16, 1939, to provide that dismissal of Fiumara's counterclaim and third party complaint against the American Surety Company should be

---

[9] 28 F. Supp. 444.

[10] 113 F. (2) 889

[11] Judge GALSTON held that "The proof shows that the plaintiff (Foley) failed to perform and that the defendant (Fiumara) was compelled to complete the construction by supplying labor and material to cover such parts of items . . . which were not performed by the plaintiff, . . . It seems clear that this work should have been done by the plaintiff. (Foley). . . . Plaintiff (Foley) was entitled to no more than he received. *Clearly it breached the contract in not going on with the work.* It is therefore entitled to no recovery. . . ."

[12] 113 F. (2) 891

without prejudice to the institution of a further action against it."[13] His motion was opposed by the Surety Company and after hearing the District Court denied it and entered a conforming order on January 3, 1940.

From both judgments of dismissal entered on October 16, 1939, Fiumara appealed. He also appealed from the order of January 3, 1940. Neither the American Surety Company nor Foley appealed from the District Court's judgment of October 16, 1939, dismissing Foley's complaint against Fiumara.

When the matter came before the Circuit Court of Appeals on Fiumara's appeal, that Court specifically stated that "the argument on appeal has been limited to the single issue of error in denying Fiumara affirmative recovery against Foley and his surety on account of a bill of some $9000 owed by Foley to Warren Foundry and Pipe Corporation, which had supplied materials for work done by Foley." It points out that in Fiumara's motion to amend the judgment "it appears that subsequent to the trial but before the entry of the judgment Fiumara was compelled in an action which Warren Corporation brought upon his guaranty to pay the sum of $8500 . . ." The appellate court then takes up the two issues upon which the lower court held Fiumara's counterclaim failed, namely, that the materialmen lost their claim because they failed to give notice required by the Miller Act, and that Fiumara can have no recovery upon his counterclaim and third party complaint because he had failed to secure a certificate of the architect required by the subcontract as a condition precedent to his undertaking the completion of Foley's uncompleted contract, and after a full discussion of the facts and the law, held that the lower court was in error in both these issues.

The appellate court then specifically holds that "the question remains whether the bond furnished by Foley

---

[13] 113 F. (2) 891

to Fiumara protects against liability to Warren Corporation under the Miller Act bond or merely provides indemnity against loss sustained by payment of such liability." This question is the basis of the cause of action in the litigation before us.. Does the Circuit Court's adjudication of this question warrant the plea of "res judicata" in this action? We hold with the court below that it does. Judge SWANN, speaking for the Circuit Court of Appeals, says (see *Fiumara v. American Surety Co.*, 113 F. (2d) 888, 889) : "Prior to the trial and the district court's decision Fiumara had sustained no loss on account of his liability to Warren Corporation. On August 8, 1939, however, he paid $8,500.00 in satisfaction of a judgment obtained by Warren Corporation in an action upon Fiumara's guaranty. These facts were brought to the attention of the district court by a motion to amend the judgment, entered October 16th, 1939, to provide the dismissal of Fiumara's counterclaim and third party complaint against American Surety Company should be without prejudice to the institution of a further action against it. The payment to Warren Corporation in satisfaction of its judgment obtained upon Fiumara's guaranty extinguished also his liability upon the Miller Act bond. It should be considered as a payment of that liability as well as of the judgment, and as such it was a loss against which the subcontractor's bond afforded Fiumara indemnity. As the term of court had not expired and the judgment was still within the court's control when Fiumara moved to modify it, we think that motion should have been granted. Accordingly the order is reversed and the judgment modified to provide that it shall be without prejudice to the institution of a further action against the American Surety Company. Costs of the appeal are awarded to the appellant." [14]

---

[14] The Surety Company in the second affidavit of defense in this case sets forth [60a, 61a] : "25. Thereafter, on or about March 4, 1939, plaintiff herein voluntarily caused American Surety Company,

The appellant now contends that the judgment of the Circuit Court of Appeals is *not* res adjudicata of the issue raised in this case because it provided "that it shall be without prejudice to the institution of a further action against the American Surety Company." We have recently stated that "the phrase 'without prejudice' ordinarily imports the contemplation of further proceedings and when it appears in an order or decree it shows that the judicial act done is not intended to be res judicata of the merits of the controversy.": *Media-69th St. Tr. Co.'s Tr. Mtge. Pool Case,* 344 Pa. 223, 236.

Here, however, it appears that the judicial act done *was intended* to be res judicata of the merits of the controversy. It appears here that the essential merits of the controversy were involved, not only in the pleadings and the trial of the cause, but in the very judgment of the court below which was declared to be erroneous, and in Fiumara's motion to amend the judgment, and in the argument on the appeal, and in the decision of the appellate court. We agree with this statement of Judge FINLETTER: "It can hardly be said that the Circuit Court meant to leave the question open after it had taken the trouble to decide it on the merits. All that was intended by the phrase 'without prejudice' was to reserve future action based upon changed conditions, not to weaken the decision of the Court on the facts before it. *Arkadelphia Co. v. St. Louis Ry. Co.* (1919), 39 Sup. Ct. 237; *Armstrong Co. v. Overseers* (1893) 158 Pa. 92." We feel bound by it not only as being res adjudicata of the issue here involved but also be-

this defendant, to be summoned as a third party defendant in said proceedings in said District Court, filed his third party complaint against this defendant therein and demanded judgment in said proceedings against this defendant as such third party defendant for the sum of $14,670.39, upon the same cause of action as is pleaded by plaintiff against this defendant in this pending suit in the Court of Common Pleas No. 7 of Philadelphia County, as of September Term, 1938, No. 2677."

cause we are impressed with the soundness of the Circuit Court's decision. Even conceding that the Circuit Court of Appeals did not intend to determine the cause finally and upon its merits, and that the use of the words "without prejudice" by that appellate court prevents the successful plea of res adjudicata here, we still hold that the conclusions reached by the Circuit Court of Appeals are correct. That court properly construed the effect of the payment by Fiumara to the Warren Company as being "a loss against which the subcontractor's bond afforded Fiumara indemnity." At that, it did not go as far as the Pennsylvania courts go on the construction of such contracts of suretyship. That court adopted the rule of *strictissimi juris* which in our courts has been deemed inapplicable to corporate compensated sureties. See: *M. E. Church of Franklin v. Equitable Surety Co.,* 269 Pa. 411, 415, 112 A. 551, 552. We might properly have held, under the circumstances in this case, that "the loss, cost or damage" against which this bond was to indemnify, "intended that kind of a loss, which, in ordinary nomenclature and thought comes into existence when the liability of the assured becomes irretrievably fixed" as "by the judgment of a court of competent jurisdiction". See: *Schambs v. Fidelity & Casualty Co.,* 259 F. 55, 60, s. c. 263 F. 895 (cert. den. 253 U. S. 494, 40 Sup. Ct. 586; 64 L. ed. 1030). Payment alone of this judgment does not create the loss. We defined "loss" in *Malley v. American Indemnity Corp.,* 297 Pa. 216, 223, 146 A. 571, 573, as follows: "Loss does not have an inflexible meaning and may consist of many different situations of varying gradations. Voluntary or involuntary separation from one's money is not the only criterion of loss. Any shrinkage in value of estate or property may on proper occasions be rightfully so termed. Any depreciation or depletion of property values, as well as the destruction of all property value through judicial sale or otherwise would likewise come within the definition; the concrete result of these factors as it affects the owner, is a loss. (Citing *Schambs v.*

*Fidelity & Casualty Co.,* supra.) Therefore, following the above decisions, under a policy such as we have before us, we hold there is a potential loss, though money may not have been actually paid; the insured may sue the company directly after judgment and before he pays anything, . . ." In Pennsylvania, the corporate compensated surety "in all essential particulars . . . is an insurance company," and is so treated in determining questions regarding its liability to obligees in such bonds. See *South Phila. State Bank v. National Surety Co.,* 288 Pa. 300, 305. The entry of the judgment in the case of *Warren v. Fiumara* before the appellee paid anything could properly be considered as "a damage" or "a loss against which the subcontractor's bond afforded Fiumara indemnity." This judgment was entered on July 24, 1939, one day before Judge GALSTON rendered his opinion, and five days before the expiration of the one year in which the Surety Company said the loss should have been fixed. It may well be considered a loss within the condition of the bond. But we need not decide the issue now whether under our decisions this "was a loss against which the subcontractor's bond afforded Fiumara indemnity" for it was judicially determined and conclusively settled by the judgment of the Circuit Court of Appeals, Second Circuit. The facts and the question became res judicata and as such should not again be litigated here. See *Grubb v. Public Utilities Comm.,* 281 U. S. 470, 479, 50 S. Ct. 374, 378; *Tasin v. Bastress,* 284 Pa. 47; *Marsteller v. Marsteller,* 132 Pa. 517, 19 A. 344.

There is still another reason why the Surety Company's defense cannot prevail. The Warren Company claim was expressly admitted by Foley and the Surety Company. The day before this action was brought by the plaintiff against the Surety Company, a conference was held in the office of the Surety Company, at which were present Foley, George R. Crosby, representative of the Surety Company; Andrew Carlson of Carlson &

Sons; Fiumara and his counsel. The position the Surety Company and Foley then was that Foley's subcontract had been fully completed and that Fiumara owed Foley the balance due on it of $14,999.14, and that from this sum Fiumara should pay the material bills of the Warren Company and Carlson & Sons. Fiumara requested the representative of the defendant Surety Company to pay the materialmen and the representative replied: "You go ahead and pay them and take it from your contract." At no time was the validity of these two claims for material challenged. The next day this action was started, and in the first statement of claim plaintiff charged that Foley failed to pay Warren & Company and Carlson & Sons' claims in connection with the project, and that by virtue of the terms of the bond given by the plaintiff under the Miller Act, "plaintiff will be obliged and legally bound to pay said claims." This averment was admitted by the appellant with the added averment that the "subcontractor has heretofore requested plaintiff to pay said two materialmen the respective sum due each of them for material furnished to said public improvement and to deduct the sum so paid from the balance due subcontractor, but that plaintiff . . . has refused so to do." The court below found as a fact, that, "The validity of plaintiff's claim based upon his payment of the Warren claim was admitted by the defendant Surety Company. In all the pleadings until the last affidavit of defense and in the pre-trial conference, plaintiff's claim based on his payment of the Warren bill was recognized. In a conference between all the parties, in which defendant was represented by its counsel, the latter advised the plaintiff to 'pay them and take it from your contract'. The plaintiff relied upon this attitude of the defendant and paid the Warren claim."

The only defense made by the appellant to the plaintiff's claim was that the subcontractor Foley had performed fully its contract, and that there was due to the

subcontractor from the plaintiff the balance of $14,999.14. Not until after Judge GALSTON'S opinion dismissing Foley's claim, and almost fifteen months after payment of the Warren & Company claim, and for the first time in the third amended affidavit of defense here filed did the Surety Company raise the defense that the Warren & Company's claim was paid belatedly and that the appellee should not have paid it since Warren & Company did not bring suit under the Miller Act within the one year period. Why Warren & Company was required to bring a suit in New York under the Miller Act when all parties in interest admitted the claim and recognized its validity is not apparent. See: *American Surety Co. v. Wheeling Structural Steel Co.,* 26 F. Supp. 395, 400.[15] Every act of Foley and the defendant Surety Company, until after payment to Warren & Company by the plaintiff, indicated that this materialman's claim was a valid one, and that therefore it could be paid by Fiumara without hazarding the interposition of some technical defense under the Miller Act. "The case falls clearly within the class in which the allegation of any specific ground of objection, of defense, or of excuse for the nonperformance of a contract operates as a waiver of all others, and as an estoppel, by the act of the party, against setting up any other ground.": *United Fruit Co. v. Bisese,* 25 Pa. Sup. Ct. 170, 174. See also *Popper v. Rosen,* 292 Pa. 122, 126; *W. & A. Pipelines v. Home Ins. Co.,* 145 Pa. 346. We agree with the learned judge of the court below who found that "had defendant raised this second contention in its first affidavit of defense", before the limitation had run under the Miller Act, "plaintiff would have easily met the same by having Warren file a complaint under the Miller Act, and thereupon pay the claim."

The judgment of the court below is affirmed.

---

[15] Reversed in part on other claims, not material here. See: 114 F. (2) 237.