Leist *v.* Schattie, Appellant.

Argued March 5, 1962. Before RHODES, P. J., ER-VIN, WRIGHT, WATKINS, MONTGOMERY, and FLOOD, JJ. (WOODSIDE, J., absent).

Before BROMINSKI, J.

*George 1. Puhak,* with him *Andrew I. Puhak,* for appellant.

*Louis George Feldmann,* with him *Richard A. Kane,* for appellee.

OPINION BY MONTGOMERY, J., March 21, 1962:

This is an appeal from the refusal to grant defendant-appellant a new trial in an assumpsit action arising out of a written agreement between him and Herman J. Leist, the appellee, for the sale of appellee's taxi business, the Checker Cab Company, to the appellant. The sale was conditioned upon its approval by the Public Utility Commission. The agreed consideration was $13,000, and the business included, inter alia, four

Plymouth cabs and one Checker cab. The parties agreed further that until the transfer received the approval of the Public Utility Commission the business should be operated under the direct management of the purchaser, upon the following conditions, viz.:

"It is agreed that if any profits be made in the operation of the said Hazleton Checker Cab Company during the pendency of such application and until the same shall be formally transferred, then such profits shall enure to the benefit of the said Thomas J. Schattie and it is further agreed that if any losses shall be sustained then the said Thomas J. Schattie shall sustain the same in full."

On May 15, 1959, the aforementioned Checker cab was damaged in an accident involving a car owned by a William Sacckette.

On June 1, 1959, the Pennsylvania Public Utility Commission approved the transfer of the certificate to the appellant to operate the taxi business. Thereupon appellee was tendered and received the balance of money due him less $3,000, which appellant withheld for reimbursement for loss of the cab. Appellee insisted upon payment of the $3,000 plus insurance premiums, rent, etc., accrued to June 1, 1959, and paid by him.

On August 6, 1959, appellee entered suit against William Sacckette, claiming damages in the sum of $1,850 for the demolition of the Checker cab; and on August 26, 1959, the appellee entered the present suit for the balance due under the agreement for the sale of the company.

At the trial on the latter suit appellant's repeated offers of testimony to show the destruction of the Checker cab and the appellee's pending suit against William Sacckette for damages arising therefrom were refused. Appellant also unsuccessfully objected to testimony being offered for the purpose of showing that in-

surance premiums, rentals, etc., had been paid by the appellee during the pendency of the application to the Public Utility Commission.

At the conclusion of the testimony the court directed a verdict in favor of seller-appellee in the amount of $3,000 for the balance due on the sale price, and submitted the questions pertaining to prorated insurance premiums, rent, etc., to the jury, which returned an additional verdict in favor of the appellee for $908.14.

It is the appellant's contention that the paragraph of the agreement hereinbefore set forth refers only to daily operating losses and profits, but was not intended to include losses for specific property covered by the sale. Appellant contends further that since the title to the taxicab in question would not have passed until the Public Utility Commission approved the transfer, the loss must fall upon the appellee.

The cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. *Betterman v. American Stores Company,* 367 Pa. 193, 80 A. 2d 66; *Mathewson v. Westinghouse Electric Corporation,* 185 Pa. Superior Ct. 284, 138 A. 2d 185. Where words used in an agreement are clear and unambiguous, such intention must be determined from the agreement itself, but where there is ambiguity or doubt, resort may be had to surrounding circumstances to ascertain the intent of the parties. *Kennedy v. Erkman,* 389 Pa. 651, 133 A. 2d 550; *Lucacher v. Kerson,* 158 Pa. Superior Ct. 437, 45 A. 2d 245, affirmed 355 Pa. 79, 48 A. 2d 857.

Under the agreement and as clearly shown by the testimony, the business was under the management of the appellant from January 1, 1959. By the disputed paragraph he agreed to take the risks involved in the everyday operation of the business. If any losses should be sustained, he agreed that he should sustain

the same in full. The Supreme Court of Pennsylvania, in defining losses, specifically stated that any depreciation or depletion of property values, as well as destruction of all property values, may come within the definition of loss. *Fiumara v. American Surety Company of New York,* 346 Pa. 584, 31 A. 2d 283. The loss occasioned by the demolition of the Checker cab, therefore, under the plain words of the agreement, should be sustained by the appellant. It is reasonable to conclude that damages to cabs used in a taxicab business were within the contemplation of the parties when they provided for the assumption of losses by appellant occasioned by his operation of the business during the interval between the date of the sales agreement and the date of the receipt of the Public Utility Commission approval. The fact that appellee entered suit against Sacckette for the damages to the cab is consistent with the agreement. He was still the owner of the business and the cab, and the proper one to sue for damages to it.[1] Such a situation is recognized by the "Sales" provision of the Uniform Commercial Code, Act of April 6, 1953, P. L. 3, §2-722 (12A P.S. 2-722):

"Where a third party so deals with goods which have been identified to a contract for sale as to cause actionable injury to a party to that contract

. . .

"(c) if at the time of the injury the party plaintiff did not bear the risk of loss as against the other party to the contract for sale and there is no arrangement be-

---

[1] The agreement provided:

"It is mutually agreed . . . that until the Certificate of Public Convenience now issued unto Herman J. Leist, trading as Hazleton Checker Cab, shall be formally transferred unto the said Thomas J. Schattie, . . . the business of the said Hazleton Checker Cab shall be continued under the direct management of the said Thomas J. Schattie, who shall . . . be considered as an employee of the said Hazleton Checker Cab and not the owner thereof."

tween them for disposition of the recovery, his suit or settlement is, subject to his own interest, as a fiduciary for the other party to the contract;".

We are of the further opinion that premiums for public liability and fire insurance are part of the operating costs of a public conveyance business and were properly considered in determining what profit or loss had occurred by the operator of the business during the interval previously discussed.

Therefore, in the suit for the balance of the purchase price and for the advancements made for business purposes, the testimony offered by appellant to show damages to the Checker cab was irrelevant and his objections to the offers of testimony as to the advancements were untenable.

Judgment affirmed.