## Brock's Assigned Estate (No. 1).

8

Argued April 25, 1933. Before Frazer, C. J., Simpson, Kephart, Maxey, Drew and Linn, JJ.

*Robert Dechert,* of *Dechert, Bok & Smith,* with him *Donaldson Cresswell,* for appellant.—Many classes of claims are provable against an assigned estate even though not immediately payable: Chestnut Street Trust Co.'s Assigned Estate, 217 Pa. 151; Mervine v. Light & Improvement Co., 304 Pa. 517; Oyster v. Short, 177 Pa. 601; Bank of Penna. v. M'Calmont, 4 Rawle 307; Jones's Est., 12 Pa. Superior Ct. 427; Cancelmo's Est., 308 Pa. 178; Potts v. Rose Valley Mills, 167 Pa. 310.

Those types of "contingent" claims which are held not provable because of contingency are wholly different from the claim involved in this appeal: Lorch's Est., 284 Pa. 500; Weinmann & Co.'s Est., 164 Pa. 405.

If the Pennsylvania statute bars such claims as this, it violates the Constitution of the United States.

*Francis H. Bohlen, Jr.,* with him *M. Biddle Saul,* of *Saul, Ewing, Remick & Saul, George F. Baer Appel* and *Townsend, Elliott & Munson,* for appellees.—The contract between the appellant and the assignors for the benefit of creditors must be interpreted to be one under which liability was contingent and not absolute at the time of the assignment,

Under the Pennsylvania cases a contingent liability is not provable against an assigned estate: Jamison's Est., 163 Pa. 143; Chestnut Street Saving Fund Co.'s Assigned Estate, 217 Pa. 151.

This claim would be contingent in bankruptcy and would not be a provable claim: Maynard v. Elliott, 283 U. S. 273.

There is no constitutional question in this case.

The Act of June 4, 1901, P. L. 404, has been held to be constitutional in so far as it is not superseded by a proceeding in bankruptcy: Walker v. Emerich, 300 Pa. 9.

If it is held that the Act of 1901 must follow the Bankruptcy Act in all particulars the effect would be to read into the Act of 1901 provisions which were never intended to be there.

OPINION BY MR. JUSTICE MAXEY, May 26, 1933:

This is an appeal of the Penn Mutual Life Insurance Company, hereinafter referred to as the "Penn Co.," from the final decree of the Court of Common Pleas of Philadelphia County, sitting in equity.

On October 24, 1930, Sidney F. T. Brock, then sole surviving member of the firm of Reilly, Brock & Company, a banking and brokerage partnership, executed a deed of assignment for the benefit of creditors. The Penn Co. filed a proof of claim as a general creditor of the assigned estate, for $2,500,000 as principal and $67,-916.67 as interest. On November 25, 1931, the assignees filed their first account together with a petition for distribution, recommending that this claim be disallowed. Appellant filed exceptions which were dismissed, whereupon it filed exceptions to the adjudication of dismissal, and these exceptions were in turn dismissed by the court in banc.

The Penn Co.'s claim arose as follows: On or about December 31, 1929, the Penn Co. loaned $2,500,000 to Corporation Real Estate Co., a duly organized Pennsylvania corporation, all of whose stock was owned by Cen-

tral Properties Co. Corporation Real Estate Co. owned the Wellington Apartment House at the northeast corner of Nineteenth and Walnut Streets, Philadelphia, and an adjoining vacant lot to the east thereof. The borrower (Corporation Real Estate Co.) executed a bond, secured by a first mortgage on this property, to the lender (Penn Co.) as security for the loan. The loan was due December 31, 1932. This loan was guaranteed by the Philadelphia Company for Guaranteeing Mortgages, hereinafter referred to as the "Mortgage Guarantee Co." The Penn Co. held no obligation of the Central Properties Co. for this debt. However, $78\frac{1}{2}\%$ of the 315,000 shares of common stock of the latter company was owned by Reilly, Brock & Co., Richard J. Seltzer, Inc., and Stroud & Co., Inc. The Penn Co. demanded as a condition precedent to its making the loan, a joint and several bond and warrant executed by the above named stockholders of Central Properties Company. In the bond and warrant executed by Stroud & Co., Inc., George K. Reilly, individually, and as copartner in Reilly, Brock & Co., Sidney T. F. Brock, individually, and as copartner in Reilly, Brock & Co., and Richard J. Seltzer, Inc., they acknowledged themselves "jointly and severally held and firmly bound unto the Penn Mutual Life Insurance Company in the sum of five million dollars......to be paid to the said Obligee ......to which payment, well and truly to be made" they and each of them "jointly and severally" bound and obliged themselves and each of them. The bond and warrant executed by Reilly, Brock et al., contained, inter alia, the following recitals: (A) That the obligors "are the owners of certain securities of the Central Properties Company, which owns a majority of the capital stock of the Corporation Real Estate Company, and it is therefore *to their advantage* that this loan be placed, and therefore *have requested* the Penn Mutual Life Insurance Company to make the loan above mentioned; and the Penn Mutual Life Insurance Company has

12

agreed to make such loan *only on condition that the obligors hereunder shall create this obligation;......*"
(Italics supplied.)

(B) "It is understood that the Penn Mutual Life Insurance Company has received from the Philadelphia Company For Guaranteeing Mortgages a guarantee bearing the same date as this document, of the repayment of all sums of every sort secured by said Bond and Mortgage of the Corporation Real Estate Company."

The bond and warrant contained, inter alia, the following clauses:

(1) "In order to protect the Obligee hereunder more fully, the Obligors under this document expressly agree that no demand or notice shall be required from the Obligee as a prerequisite to liability of the Obligors hereunder, except only the deposit by Obligee of a written demand upon the Philadelphia Company For Guaranteeing Mortgages, its successors or assigns, in the United States Mail Box ninety (90) days prior to demand upon these Obligors, followed by failure of the said Philadelphia Company, its successors or assigns, to make payment of all sums unpaid under said Bond and Mortgage within the time specified in its guaranty,—it being the intention of the Obligors and Obligee hereunder that, in case of default under the terms of the Bond and Mortgage of the Corporation Real Estate Company above mentioned, the Obligee hereunder shall have the right to proceed against the Obligors hereunder independent of the said guaranty by the Philadelphia Company For Guaranteeing Mortgages;—except only that this bond shall not be entered nor shall the Obligors hereunder be required to make payment as here provided until demand upon the Philadelphia Company For Guaranteeing Mortgages, its successors or assigns, and its failure to pay in full, as above mentioned, and until......two (2) days......after written notice shall have been given by the Obligee hereunder to the Obligors hereunder, or to any one of them on behalf of all."

(2) The Obligors agree that on default under the terms of the Bond and Mortgage of the Corporation Real Estate Co. and on the failure of the Mortgage Guarantee Co. to pay within the time provided in its guaranty, and the two days' notice to Obligors provided for in this guaranty, the Obligee shall be entitled to require of the Obligors or any of them, that in lieu of making payment directly under the obligation, "they or any of them shall purchase from Obligee said Bond and Mortgage......for an amount equal to all sums of every sort then remaining unpaid under said Bond and Mortgage; and Obligors hereunder jointly and severally agree upon such demand to purchase for such an amount said Bond and Mortgage......and agree furthermore that the failure of them or any of them to pay to Obligee all sums due on account of such purchase shall cause them to be in default under this Bond and shall entitle Obligee, its successors or assigns, to enter judgment hereunder forthwith for any sums so unpaid under such obligation to purchase."

The assignment of Reilly, Brock & Co. was made under the provisions of the Act of June 4, 1901, P. L. 404. This act relates to voluntary assignments for the benefit of creditors. A reading of this act shows that by "creditors" is meant those persons to whom a person, firm, partnership, joint stock company, or corporation is indebted *whether the debt is due or not*. The phrase "debt then existing whether due or not" appears in the first section and elsewhere in the act. For example, section 30 of this act provides the form of release to be signed by creditors, as follows: "The undersigned creditors of E. F., an insolvent, for and in consideration of the sums of money set opposite our respective names, and received by us from A. B., assignee of the estate of E. F., an insolvent, do hereby release the said E. F. from any and every debt, demand and liability which we had or may have had against him, at the date of his assignment, on the......day of......A. D. ......, *whether due or not*

14

[italics supplied] ; and hereby agree that no suit, action or execution shall be maintained for or by reason of such debt, demand, or liability."

The word "debt" as used in this act is simply given its established meaning. Blackstone, Lewis's ed., book 3, section 154, says: "The legal acceptation of 'debt' is a sum of money due by certain and express agreement ......and does not depend upon any subsequent valuation to settle it." In a footnote to this section, it is said: "The word debt has a broader meaning than is ·here given. Properly it is used to denote all that is due a man, under any form of obligation or promise," citing Schouler's Pers. Prop., volume 1, section 59, page 64. Appellee would give to the word "debt" a meaning which is only properly given to the phrase, "liquid debt," i. e., "one immediately and unconditionally due": Bouvier's Law Dictionary, volume 1, page 513. In "Words and Phrases," First Series, volume 2, page 1865, "debt" is defined as "any claim for money that one is bound to pay," citing In re Lambie's Est., 94 Mich. 489, 54 N. W. 173.

This court held in Chestnut Street Trust & Saving Fund Company's Assigned Estate, 217 Pa. 151, 153, 66 A. 332: "The rights of creditors of an assigned estate are fixed at the date of the assignment. Only those who are creditors of the assignor at that date are entitled to participate in the distribution of the proceeds of the estate. A creditor is one who has a definite demand against the estate, or a cause of action capable of adjustment and. liquidation upon a trial: Reading Iron Works, 150 Pa. 369 [24 A. 617]. Debts due in præsenti and payable in futuro are, of course, claims against the assignor for which his estate is liable in the hands of his assignee."

Whether the Penn Co. was a creditor of Reilly and Brock at the time of the assignment depends on whether Reilly and Brock, as obligors on the bond in question, were *guarantors* or *sureties.* If guarantors, they simply

agreed that the engagement of another would be performed and under such an agreement they would not become indebted to the indemnitee until that party had suffered a loss against which the covenant of guarantee ran. A surety is directly and immediately liable for a debt: an indemnitor is liable only after unsuccessful efforts by the indemnitee to collect from the debtor. As to contracts of suretyship as distinguished from contracts of indemnity, see 50 C. J., page 12, section 1, and 31 C. J., page 420, section 6.

In determining whether a contract is one of surety, (1) "the intent of the parties, as gathered from the language of the instrument in the light of surrounding facts and circumstances [is] controlling": 50 C. J., page 76, section 131. See U. S. v. Amer. Surety Co., 200 U. S. 197; (2) "Ambiguous language will ordinarily be construed against the surety if it is employed by him, and in favor of the obligee": 50 C. J., page 78, section 131; (3) "The law is not so tender to him [i. e., one who had a personal interest in the company whose obligations he was guaranteeing] as to one who was not being personally obliged by the loan of the bank's money. ......
This is but a further application of the well-known principle that the rule of strict construction is to be applied only in favor of a gratuitous surety and not a compensated surety": Cancelmo's Est., 308 Pa. 178, 183, 162 A. 454.

On analyzing the bond before us we find that (1) Reilly, Brock et al., acknowledged themselves "bound" unto the Penn Mutual Life Insurance Company in the sum of $5,000,000, to the payment of which they obligated themselves; (2) they certified that it was "to their advantage that this loan be placed" and they "requested" the Penn Co. "to make the loan"; (3) the obligors could be released from their $5,000,000 obligation only by paying $2,500,000 to the Penn Co. at or before the maturity of the bond and mortgage of the Corporation Real Estate Co., together with interest, taxes and all other charges;

16

(4) though the Mortgage Guarantee Company guaranteed the repayment of all sums of money secured by the bond and mortgage of the Corporation Real Estate Co. "no demand or notice" was "required from the obligee as a prerequisite to liability of the obligors hereunder except" that the obligee must make demand upon this company ninety days before making a demand upon the obligors for the payment of the debt. The phrase "prerequisite to liability of the obligors hereunder" as used in the clause quoted can only mean prerequisite to liability actually to *make payment* of the debt emphatically avowed in the opening paragraph of the bond, and that was the debt or obligation of Reilly, Brock et al.

"A person who undertakes to pay money or to do any other act in the event that his principal fails therein is a surety": 21 R. C. L., page 947, section 3. See Saint v. Wheeler, etc., Mfg. Co., 95 A. 362.

It clearly appears from the foregoing analysis of the bond that the relationship between the Corporation Real Estate Co. and Reilly, Brock et al., was that of principal and surety. The Corporation Real Estate Co. was originally and primarily liable for the payment of the $2,500,000 debt to the Penn Co., Reilly and Brock were bound in an accessorial or collateral capacity. They loaned their credit to aid a principal with insufficient credit of its own, and thereby they as well as that principal became debtors of the company which, relying on that joint and several credit, parted with its money.

The absoluteness of a present obligation to pay a certain amount of money on a future day is not affected by the fact that there is a possibility that the obligation will never have to be discharged by the obligor. That possibility attends all legal obligations. For example, A for a valuable consideration absolutely promises to pay B $1,000 in one year. It is *possible* that A will never have to make that payment, for B may cancel the debt, or some generous relative or friend may pay it for A. A surety's obligation is immediate and absolute from the

day he enters into it, though in a certain contingency, i. e., payment by his principal, the surety will be released from his obligation. In strict accuracy all commitments for the future are "contingent."

Presumably every surety has faith in the integrity and financial strength of his principal and has a reasonable expectation that he will never be called on to make good his commitment as surety for the principal, but no percentage of chance, however high, that the surety will not be called on to pay the debt he avows, can affect in the slightest degree the force of his legal obligation. Every one of a hundred or more sureties is equally a "debtor" of the person assured.

An indemnitor's obligation is not immediate and absolute. It is born only on the happening of a contingency, that contingency being the default of the person whose favorable action the indemnitor guarantees. A surety's obligation is a living thing subject to possible extinction: an indemnitor by his engagement has merely put himself in a position where he may in the future be shouldered with an obligation that can legally come into being only through another's default. The obligation of Reilly and Brock to pay the Penn Co. came into being on the day they signed the bond, to wit, December 31, 1929. From that date onward and until the debt they with others obligated themselves to pay, was paid, whether by the Mortgage Guarantee Co. or by the Corporation Real Estate Co., they, i. e., Reilly and Brock, owed a debt and were under a liability to the Penn Co. within the meaning of those words as they appear in the phrase "all debts and liabilities now due or to become due by the said copartnership of Reilly, Brock & Company" in the assignment by Sidney F. T. Brock, individually, and as surviving and liquidating partner of the firm of Reilly, Brock & Co. (assignor), made on October 24, 1930, in accordance with the provisions of the Act of June 4, 1901, P. L. 404.

The Act of July 24, 1913, P. L. 971, section 1, 8 P. S., page 213, provides that "Every written agreement hereafter made by one person to answer for the default of another shall subject such person to the liabilities of suretyship, and shall confer upon him the rights incident thereto, unless such agreement shall contain in substance the words: 'This is not intended to be a contract of suretyship,' or unless each portion of such agreement intended to modify the rights and liabilities of suretyship shall contain in substance the words: 'This portion of the agreement is not intended to impose the liability of suretyship.' "

The written agreement before us omits mention of any *non*-intention "to impose the liability of suretyship." If the obligors had sought to avoid the liabilities of suretyship, they should have done so in language conformable to the prescriptions of the act.

The decree of the court below is reversed. The claim of the Penn Mutual Life Insurance Company filed with C. S. W. Packard and C. S. Newhall, assignees in the deed of assignment for the benefit of creditors from Sidney F. T. Brock, individually, and as surviving and liquidating partner of Reilly, Brock & Co., as a general claim of the assigned estate, is reinstated; the record is remitted so that further proceedings may be had not inconsistent with this opinion; costs to be paid by appellees.