**WISE INVESTMENTS, INC., Plaintiff,**

v.

**BRACY CONTRACTING, INC. and National Fire Insurance Company of Hartford, Defendants.**

No. 01–3458

United States District Court, E.D. Pennsylvania.

Oct. 17, 2002.

Scott R. Lipson, Tallman Hudders & Sorrentino, Allentown, PA, Adam C. Harrison, Jeffrey S. Rosenfeld, Adam C. Harrison, PC, Towson, MD, for Plaintiff.

James D. Hollyday, Pepper Hamilton, LLP, Philadelphia, PA, Bruce W. Ficken, Joshua P. Broudy, Pepper Hamilton & Scheetz, Philadelphia, PA, Steven A. Bergstein, Hyman, Engel, Weiner and Bergstein, Allentown, PA, for Defendants.

## OPINION AND ORDER

VAN ANTWERPEN, District Judge.

Defendant National Fire Insurance Company of Hartford ("National Fire") moves for summary judgment pursuant to Fed.R.Civ.P. 56, against Wise Investments, Inc. ("Wise"), in an action to recover on a performance bond on which National Fire is named as the surety. Wise's claim under the bond arises from the disputed performance of a contract between itself, as owner, and Bracy Contracting, Inc. ("Bracy"), as general contractor, to build an outpatient clinic in Allentown, Pennsylvania for the Department of Veterans Affairs (the "VA"). In reaching our decision, we consider Defendant National Fire Insurance Company of Hartford's Motion for Summary Judgment, filed September 13, 2002, Plaintiff Wise Investments, Inc.'s Memorandum of Law in Opposition to Defendant National Fire Insurance Company of Hartford's Motion for Summary Judgment, filed September 25, 2002, and Defendant's Reply Memorandum thereto, filed October 3, 2002. Because disputed issues of material of fact remain as to whether Bracy, Wise, or both failed to fulfill their obligations under the contract, we deny National Fire's Motion for Summary Judgment in part, and grant the motion in part as set forth below.

### I. STATEMENT OF JURISDICTION

We have original subject matter jurisdiction over claims between citizens of different states in which the monetary amount in dispute is greater than $75,000 under 28 U.S.C. § 1332. Plaintiff Wise Investments, Inc. is incorporated in the state of Nevada and has its principal place of business in Colorado. Defendant Bracy Contracting, Inc. is incorporated in Pennsylvania and has its principal place of business in Allentown, Pennsylvania. Defendant National Fire Insurance Company of Hartford is incorporated in Connecticut and has its principal place of business in Illinois. Wise Investments seeks damages from each defendant well in excess of the statutory minimum. As there is complete diversity between the parties and the amount in controversy exceeds $75,000, this court has jurisdiction to hear Plaintiff's complaint.

### II. STANDARD OF REVIEW

The court shall render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is

"genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. All inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.1985), cert. denied, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying those portions of the record that it believes demonstrate the absence of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party must respond with facts of record that contradict the facts identified by the movant and may not rest on mere denials. *Id.* at 321 n. 3, 106 S.Ct. 2548, 91 L.Ed.2d 265 (quoting Fed. R.Civ.P. 56(e)); *see First Nat'l Bank of Pa. v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277, 282 (3d Cir.1987). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. 2505.

When federal courts sit in diversity cases, they must apply the substantive law of the states where they sit. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). When they are required to interpret or apply state law, they must consider and accept the decisions of the state's highest court as the ultimate authority regarding state law. *Ciccarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir.1985). When, however, the highest court of the state has not authoritatively considered the issue, "our disposition of such cases must be governed by a prediction of how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980).

## III. FACTS AND PROCEDURAL HISTORY

In January of 1999, Wise Investments, Inc. contracted with Bracy Contracting, Inc. to build an outpatient clinic for the Department of Veterans Affairs at 3110 Hamilton Boulevard in South Whitehall Township, Pennsylvania. Wise executed two documents with Bracy, a construction contract (the "Primary Contract") dated January 7, 1999, and a contingency contract (the "Contingency Allowance") also dated January 7, 1999. The parties agreed to the Contingency Allowance in the event that a less expensive alternative to a concrete retaining wall would not be suitable for the clinic property.

At the same time the parties made their agreement, Bracy, as general contractor, provided a performance bond (the "Bond") to Wise, the obligee, naming National Fire Insurance Company of Hartford as the surety. The Bond, discussed in greater detail below, incorporated the terms of the construction contract[1] by reference. It also limited coverage specifically to performance-the cost of completion of the project-and made no mention of recovery for additional costs such as liquidated damages or attorneys' fees. The contract, by

---

1. The parties dispute whether the Bond covers both the Primary Contract and the Contingency Allowance.

contrast, expressly contemplated liability for such additional costs.

As construction progressed, Wise became dissatisfied with Bracy's performance. Among other problems, it alleges that one of Bracy's subcontractors had improperly graded the site of the retaining wall. After several attempts at remedying the work had failed, Wise and Bracy executed a document outlining the understanding of both parties regarding the disputed work and payment for it. This February 19, 2000 agreement (the "Alternate Wall Agreement") also provided for the construction of a concrete retaining wall at the southwest corner of the clinic property. At some time thereafter, Bracy ceased its construction efforts, believing it was not obligated to perform. Final completion of the wall was delayed until June 15, 2000, although it is unclear whether substantial completion was achieved as planned by March 31, 2000. Other outstanding items for the clinic project remained unfinished according to Wise, including punch list items.

In May of 2000, Bracy filed a mechanic's lien against Wise in the Court of Common Pleas of Lehigh County. The claim sought recovery of money allegedly owed by Wise to Bracy for work on the retaining wall.[2] After Bracy had filed the state lien claim, Wise gave written notice to Bracy that it was in default of the Construction Contract on November 17, 2000 and sent a copy to National Fire as well. The copy never reached National Fire because its address listed in the Bond was not correct. On December 27, 2000, Wise sent a second copy to National Fire's Chicago office, which the company acknowledged receipt of by letter dated January 10, 2001.

On July 10, 2001, shortly before the state court trial regarding the lien, Wise brought a separate action in federal court seeking recovery for Bracy's allegedly inadequate performance. The lawsuit named Bracy and the surety, National Fire, as defendants. Count IX of the Complaint alleges that National Fire is liable for Bracy's failure to perform the Construction Contract and all other claims Wise may have against Bracy. Bracy filed its answer on September 18, 2002 and brought a counterclaim against Wise. We denied Wise's motion to dismiss the counterclaim by memorandum dated November 1, 2001. National Fire now moves for summary judgment on Count IX of the Complaint.

## IV. DISCUSSION

### A. Scope of Coverage Under the Bond

We first consider the scope of the performance bond issued by National Fire that names Wise as obligee. The parties do not dispute that the Bond applies to the Primary Contract dated January 7, 1999. The issue we now resolve is whether the Bond also applies to the Contingency Allowance dated January 7, 1999 and the subsequent Alternate Wall Agreement dated February 19, 2000. For the reasons set forth below, we find that the scope of the Bond applies to all three agreements.

### 1. Plaintiff Wise's Position

■ Wise maintains that the Primary Contract and the Contingency Agreement should be viewed as a single contract that concerned the construction of the Department of Veterans Affairs Satellite Outpatient Clinic in Allentown, Pennsylvania. Wise also asserts that the subsequent Alternate Wall Agreement was not a sepa-

---

2. By its opinion on June 20, 2002, the court ruled that Bracy's lien claim was barred by a waiver of mechanics lien claims previously

executed by the parties and recorded in Lehigh County.

rate contract, but rather an amendment to both the Primary Contract and the Contingency Allowance (collectively, the "Construction Contract"). From this position, Wise maintains that the Bond covers both the two-document Construction Contract and the Alternate Wall Agreement. In support of its position, Wise cites the decision of the Court of Common Pleas for Lehigh County, Pennsylvania in *Bracy Contracting, Inc. v. Wise Investments, Inc.*, No.2000–M–7 (June 20, 2002), in which Judge Alan M. Black found that the Alternate Wall Agreement was a modification of the original Construction Contract, and not a new and separate contract. In addition, Wise argues that the language of the Bond expressly contemplates that any amendments to the Construction Contract will be within the scope of the Bond.

### 2. Defendant National Fire's Position

National Fire argues that the terms of the Bond refer to a "written agreement dated January 7, 1999" covering only the Primary Contract and not the Contingency Allowance or the Alternate Wall Agreement.

### 3. The Bond's Coverage Extends to All Three Agreements

■ We agree with Wise's position for two reasons. First, the existence of a prior state court decision regarding the three agreements warrants the application of collateral estoppel. The district courts have broad discretion in deciding whether to apply the doctrine of collateral estoppel. *Parklane Hosiery Co. v. Shore*, 439 U.S.

322, 331, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). To apply the doctrine, courts consider four elements: (1) whether the issue decided in the prior adjudication was identical with the one presented in the later action; (2) whether there was a final judgment on the merits; (3) whether the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) whether the party against whom it is asserted has had a full and fair opportunity to litigate the issue in the prior adjudication. *Temple University v. White*, 941 F.2d 201, 212 (3d Cir.1991).

Collateral estoppel is particularly appropriate in the present case. In the prior state court decision, Judge Black reduced a dispute over the enforcement of a mechanics lien to a single issue: "whether the parties' agreement on February 19, 2000 for the construction of a retaining wall was (a) a modification of the original construction contract for the project or (b) a new and separate contract...." *Bracy Contracting, Inc. v. Wise Investments, Inc.*, No.2000–M–7 at 2. The opinion explained an earlier finding by the court at trial, that the Alternate Wall Agreement was understood by the parties to be an amendment to the Construction Contract.[3] *Id.* The court then concluded that all of the provisions of the Alternate Wall Agreement were "part of a single comprehensive workout of a troubled construction project." *Id.* at 8. The above facts establish the first two requirements for collateral estoppel: (1) consideration of an issue identical to one already resolved in a prior adjudication, (2) which proceeded to a final

---

**3.** Judge Black's opinion does not expressly state that the Primary Contract and the Contingency Allowance were part of the same wholly-inclusive Construction Contract, but the language of his opinion suggests that he made no distinction between the two. If the February 19, 2000 Alternate Wall Agreement was part of the overall contract, as the state

court found, then it would be hard to see how the Contingency Allowance, executed along with the Primary Contract, would not also be included. We discuss the issue in more detail below and also find that based on the language of the documents as interpreted according to relevant contract law, the Bond covers all three agreements.

judgment on the merits. In addition, (3) National Fire, through its obligations on the Bond, is an entity in privity with Bracy, a party to the prior adjudication. Finally, (4) Bracy had a full and fair opportunity to litigate the issue. Bracy sought to enforce a lien for $185,317.19 against property owned by Wise. Although the amount is not the same as claimed in the present dispute, it is significant enough to ensure that Bracy had sufficient motivation to strenuously argue its case. Because the agreements comprise a single construction contract, the Bond's coverage properly extends to all three.

■ We agree with Wise's position for a second reason, based on our interpretation of the agreements between the parties. As the Third Circuit explained,

> The difference between the interpretation and construction of contracts is discussed in *Ram Construction Co., Inc. v. American States Insurance Co.,* 749 F.2d 1049 (3d Cir.1984). When an ambiguity exists in the agreement, the problem is one of interpretation. If, however, the terms are clear, construction of the contract determines its legal operation. The paramount goal of contract interpretation is to determine the intent of the parties. There is no special standard of interpretation for contracts creating secondary obligations.

*Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.,* 273 F.3d 332, 335 (3d Cir.2001) (citations omitted). *See also In re Brock,* 312 Pa. 7, 166 A. 778, 781 (1933) (holding that under Pennsylvania law, ambiguous language employed by the surety will ordinarily be construed against it in favor of the obligee).

■ In addition, the Third Circuit has held that the rule of *strictissimi juris,* which states that a guarantor is entitled to have his undertaking strictly construed, and that its terms cannot be extended by construction or implication beyond the precise terms of the contract, applies only to gratuitous sureties. *Garden State Tanning, Inc.,* 273 F.3d at 335. The Pennsylvania Supreme Court has long maintained this position, holding that *strictissimi juris* does not apply to "corportate compensated sureties." *Fiumara v. Am. Sur. Co. of New York,* 346 Pa. 584, 31 A.2d 283, 287 (1943). *Fiumara* restated the principle described in *Young v. American Bonding Co. of Baltimore:* "The doctrine that a surety is a favorite of the law, and that a claim against him is *strictissimi juris* does not apply where the bond is executed upon a consideration by a corporation organized to make such bonds for profit, since, while such corporations may call themselves "surety companies," their business is in all essential particulars that of insurance. . . ." 228 Pa. 373, 77 A. 623, 626 (1910).

In this case, the language of the bond states that it applies to "a contract" between Wise and Bracy, formalized "by written agreement dated January 7th, 1999" for the construction of the "New Veterans Administration Clinic, Allentown, PA." (Pl.'s Compl., Ex. C, 1). To the extent that the Bond refers only to "a contract" to build the clinic, an ambiguity exists as to whether that term was meant by the parties to include just the Primary Contract or both the Primary Contract and the Contingency Allowance. To resolve the ambiguity we must interpret the term "contract", and in doing so, we consider the intent of the parties. According to Wise's version of events, Bracy convinced Wise to delete plans for the concrete retaining wall from the Primary Contract. In return for its agreement, Wise insisted that Bracy sign the Contingency Allowance, providing that the concrete wall would be built if the alternative earth retaining method proved unsuitable. (Def.'s Mot. for Summ. J., Ex. C, 12). Wise, if its

factual allegation are taken as true, would not have executed the Primary Contract without an agreement to the Contingency Allowance.

The plain language of the Bond suggests that both documents are properly part of a single contract, stating that the Bond applies to the "written agreement dated January 7th, 1999." If National Fire, the insurance company and surety, wanted to exclude the Contingency Allowance from the scope of the Bond, it could have done so with specific reference to each document dated January 7, 1999. Having failed to do so, National Fire, a "corporate compensated surety," cannot now seek to have the terms of the bond construed against Wise, the obligee. Finally, the Bond defines the term "balance of the contract price" to mean "the total amount payable by Owner to Contractor under the Contract *and any amendments thereto.*" (Pl.'s Compl., Ex. C, 1) (emphasis added). As discussed above, the Alternate Wall Agreement was an amendment to the contract and is therefore included in the scope of the Bond. We find that the Contingency Allowance was likewise an amendment, or alternatively, part of the original Construction Contract.

**B. Notice to National Fire of Bracy's Alleged Default and Date of Substantial Completion**

Next, we consider whether Wise provided timely notice to National Fire of Bracy's alleged default. Both parties agree that Wise notified National Fire of the default, at the latest, by letter dated December 27, 2000, but beyond that, they agree on little else. Based on the reasons below, we find that National Fire is not entitled to summary judgment, having failed to show that it was prejudiced by Wise's delay in giving notice. We reach this result despite an answer to in-terrogatories given by Wise accepting the construction project as substantially completed. We decline to exercise judicial estoppel to the subsequent deposition offered by Wise, as explained below.

**1. Plaintiff Wise's Position**

Wise claims that it sent notice to National Fire of Bracy's default by letter on November 17, 2000, but that the address listed for National Fire was incorrect, so the notice had to be resent. A second letter was sent to National Fire on December 27, 2000, which the insurance company acknowledged receiving on January 10, 2001. (Def.'s Mot. to Dismiss, Exs. B & C). Although in its answers to Bracy's first set of interrogatories Wise stated that Bracy achieved "substantial completion" as of September 12, 2000 (Def.'s Mot. for Summ. J., Ex. C, 19), Wise also noted in its answers to interrogatories that numerous items remained unresolved, including the construction of the concrete retaining wall. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J., Ex. A, 5–7). Barbara O'Connell, the president of Wise, later explained in her deposition that many items remained to be remedied as of September 12, 2000. When National Fire acknowledged notice on January 10, 2001, it could have remedied the outstanding items. Wise defends its decision not to respond to National Fire's request for additional information by arguing that the Bond creates no such obligation.

**2. Defendant National Fire's Position**

National Fire argues that Wise's notice, sent six to ten weeks after Bracy's alleged default, was given too late to allow Wise to recover on the Bond. In addition, National Fire requested information from Wise that it never received. This amounted to a failure to meet conditions precedent to filing a claim under the Bond according to

National Fire. It also claims that it had no way of performing its surety obligations due to the extremely prejudicial late notice. Finally, National Fire argues that it has no further obligations because Wise stated in an answer to interrogatories that Bracy achieved substantial completion on the project no later than September 12, 2000.

### 3. Timeliness of Notice is not Dispositive for Purposes of Summary Judgment

■ Summary judgment may be appropriate in cases where the date of an insured's discovery of loss is not in dispute, but the insured's notice of loss was not timely under the applicable bond. The insurer's success in such cases will depend on whether the jurisdiction treats the duty to give timely notice as a condition precedent to recovery under the bond or as a mere breach of a covenant that will discharge the insurer only to the extent of prejudice. In jurisdictions that do require a showing of prejudice, the prospects for prevailing on a motion for summary judgment will be slim, because the existence and extent of a party's prejudice is not the type of issue that is generally resolved as a matter of law. Michael J. Weber and James A. Knox, *Summary Judgments in*

*Financial Institution Bond Litigation,* 24 Brief 22, 44–45 (1994).

The Pennsylvania Supreme Court, in *Brakeman v. Potomac Insurance Co.,* adopted the view that a showing of prejudice is required before an insurance company may deny recovery. 472 Pa. 66, 371 A.2d 193, 196 (1977). In *Brakeman,* an injured party sued an insurance company to recover the amount of a consent judgment against its insured; the insurance company did not receive notice of the March 3, 1970 accident until October 6, 1970. *Id.* at 194. As a preliminary matter, the court noted that provisions in a policy requiring written notice "as soon as practicable" are valid. *Id.* at 195. Such provisions create a duty to render notice as a condition precedent to recovery, and a breach will release an insurance company from its obligations regardless of whether the company suffered prejudice. *Id.* Absent an express provision such as "as soon as practicable" however, an insurer must also show it has been prejudiced by the delay to avoid liability on a claim. The court held specifically that, "the preferable rule is that which requires the insurance company to prove not only that the notice provision was breached, but also that it suffered prejudice as a consequence." [4] *Id.* at 196.

**4.** Courts have questioned the applicability of Brakeman to other contexts. *See Hosp. Support Servs., Ltd. v. Kemper Group, Inc.,* 889 F.2d 1311, 1313 (3d Cir.1989) (holding that rule of *Brakeman,* originally applied to notice of loss provisions, does not also apply to limitation of suit clauses); *Block v. Doubletree Hotels Corp.,* 5 F.Supp.2d 321, 324 (E.D.Pa. 1998) (following *Hospital Support Services* and finding that Brakeman did not apply to a limitation of suit clause); *see also Borish v. Britamco Underwriters, Inc.,* 869 F.Supp. 316, 319 (E.D.Pa.1994) (distinguishing "occurrence" policies, to which Brakeman applies, from "claims-made" policies, to which the court held it does not). The present case concerns a notice of loss provision, not a limitation of suit clause, rendering *Hospital*

*Support Services* and *Block* inapplicable. *Borish* is likewise inapplicable. This case does not concern a "claims-made" policy under which a claim must be made within a specified period of time, because notice was not the essence of recovery under the Bond. *See City of Harrisburg v. Int'l Surplus Lines Ins. Co.,* 596 F.Supp. 954, 960–62 (M.D.Pa.1984). Here, the Bond focused primarily on performance. The Bond remained valid until Bracy performed the Construction Contract, and the parties dispute whether significant portions of the work were completed at the time Wise gave notice of the alleged default. Summary judgment for National Fire is therefore inappropriate based on any of the cases that limit the application of *Brakeman.*

Under *Brakeman*, National Fire is not entitled to summary judgment in the present dispute unless it has demonstrated first, that the notice provision of the bond was in fact breached, and second, that the breach resulted in prejudice to its position as surety. *See* 371 A.2d at 198. By its terms, the Bond apparently contemplates some notice to the surety when the obligee presents a claim.[5] We decline to decide upon summary judgment whether the notice provisions of the Bond have been breached in the absence of conclusive authority or evidence cited by either Wise or National Fire in their memoranda regarding the Motion for Summary Judgment.[6] Regardless, the Bond does not contain a provision requiring notice "as soon as practicable," or similar express language creating a condition precedent that would excuse National Fire from demonstrating prejudice, at least according to the *Brakeman* decision.

▮ With respect to demonstrating that it suffered prejudice as a result of Wise's delay, National Fire claims that there were no costs of completion to be paid at the time Wise provided notice of Bracy's alleged default. (Def.'s Mem. of Law in Support of Def.'s Mot. for Summ. J., 5). Wise opposes this factual allegation and

claims that a significant amount of work remained to be done as of December 27, 2000. (Pl.'s Mem. of Law in Opp. to Def.'s Mot. for Summ. J., 3). Given this disputed issue of material fact, we will not grant summary judgment for Defendant based on its arguments regarding notice. National Fire also argues that it has no liability because Wise refused to provide additional information regarding the circumstances of the alleged default. A court may not create obligations to perform not imposed by the terms of a bond. *Atlantic Ref. Co. v. Cont'l Cas. Co.*, 183 F.Supp. 478, 487 (W.D.Pa.1960) (citing *Commonwealth v. Fidelity Deposit Co.*, 355 Pa. 434, 50 A.2d 211, 212 (1947)). Assuming for the purposes of this argument that the Bond required Wise to provide notice, no terms required Wise to furnish the additional information requested by National Fire. Wise's failure to provide additional information will not therefore excuse National Fire from performing under the terms of the Bond.

National Fire also argues that "failure of notice to the Surety is fatal" to Wise's complaint under *McShane Contracting Co. v. United States Fidelity & Guaranty Corp.*, 61 F.R.D. 478 (W.D.Pa.1973).

---

**5.** The Bond provides as follows: "Whenever Contractor shall be, and declared by Owner to be in default under the Contract, the Owner having performed Owner's obligations thereunder, the Surety may promptly remedy the default, or shall promptly 1) Complete the Contract in accordance with its terms and conditions, or 2) Obtain a bid or bids for completing the Contract ... and arrange for a contract between such bidder and Owner...." (Pl.'s Compl., Ex. C, 2). At least one other court has impliedly interpreted similar language in a bond to require notice to the surety, but did not construe the language as a condition precedent. *See L & A Contracting Co. v. Southern Concrete Servs., Inc.*, 17 F.3d 106, 109 n. 6 (5th Cir.1994).

**6.** Neither party cites to one particularly relevant article of the Construction Contract, incorporated by reference under the terms of the Bond: "Correction of Work—23.1 The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, *whether observed before or after substantial completion,* ... and shall correct any Work found to be not in accordance with the requirements of the Contract Documents *within a period of one year from the date of Substantial Completion.*" (Pl.'s Compl., Exs. A & B, Art. 23) (emphasis added). Not only does this article affect the issue of notice, it also remains relevant to Wise's alleged acceptance of Bracy's work as of September 12, 2000, as we discuss below.

Counsel for National Fire misreads the precedential value of that case. The dispute in *McShane* appears very similar to the present one to the extent that a plaintiff filed suit against the surety on a performance bond. The surety maintained it had no obligation to pay a claim on the bond because the plaintiff did not give it an opportunity to remedy a default. *Id.* at 479–80. The court did not find, as National Fire maintains, that failure to give notice is fatal to a claim. Instead, the court *denied the defendant's motion for summary judgment* because the plaintiff had raised a disputed issue of material fact regarding the notice given. *Id.* at 481. In addition, the performance bond at issue in *McShane* provided that the surety's obligations arose only "after reasonable notice" given by the obligee. *Id.* at 480. The Bond now at issue contains no such express language, suggesting that a denial of summary judgment based on the defendant's arguments regarding notice is even more appropriate in National Fire's case. If the *McShane* decision reached the merits of surety law instead of limiting itself to a procedural discussion of Fed.R.Civ.P. 56, it would provide strong support against National Fire's position.

4. Answer by Wise Acknowledging Substantial Completion

■ When, without satisfactory explanation, a nonmovant's affidavit contradicts earlier deposition testimony, the district court may disregard the affidavit in determining whether a genuine issue of material fact exists. *Hackman v. Valley Fair*, 932 F.2d 239, 241 (3d Cir.1991). "The objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit." *Martin v. Merrell Dow Pharm., Inc.*, 851 F.2d 703, 706 (3d Cir.1988). This view is a contemporary application of the equitable doctrine of judicial estoppel, some-

times called "preclusion by inconsistent positions." *AFN, Inc. v. Schlott, Inc.*, 798 F.Supp. 219, 223 (D.N.J.1992). The doctrine derives from the Supreme Court's statement in *Davis v. Wakelee* that "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). The Third Circuit utilized the doctrine in *Scarano v. Central Railroad Co.* as a measure to protect the integrity of the judicial process by preventing litigants from "playing fast and loose with the courts." 203 F.2d 510, 513 (3d Cir.1953). The doctrine applies in a situation where "intentional self-contradiction is being used as a means of obtaining unfair advantage." *Id.*

Recently, the Third Circuit has applied judicial estoppel in several situations involving inconsistent sworn testimony, but has also limited the boundaries of the doctrine's application. In *Martin v. Merrell Dow Pharmaceuticals, Inc.*, a plaintiff offered testimony regarding the date she ingested the drug Benedictin that plainly contradicted no fewer than eight of her prior sworn statements. 851 F.2d at 705. When she offered no explanation for the inconsistency, the circuit court held that the district court properly disregarded the later affidavit for summary judgment purposes. We note that *Martin* involved a simple factual question of when a drug was ingested, not an abstract question of interpretation.

The next case concerned the precise date a plaintiff had received notice from his union that it would not pursue his Labor Management Relations Act claim. Claims brought six months after such notice were barred by the applicable statute of limitations. *Hackman v. Valley Fair*,

932 F.2d 239, 240 (3d Cir.1991). In his deposition, the plaintiff admitted that he had received notice by June 1, 1989 for a claim he filed on December 4, 1989. In an effort to avoid summary judgment, the plaintiff filed a subsequent affidavit alleging he was confused during the deposition and that notice did not occur until June 7, 1989. *Id.* at 240–41. The district court ignored the attempt to contradict previous testimony, granted summary judgment, and the circuit court affirmed. *Id.* at 241. *Hackman* therefore concerned the issue of notice, which, like *Martin,* involved a relatively straightforward factual question.

In *Videon Chevrolet, Inc. v. General Motors Corp.,* the plaintiff, Videon, jeopardized its cause of action by characterizing a mandatory General Motors surcharge on vehicles as a price increase instead of a prohibited advertising fee. 992 F.2d 482, 484 (3d Cir.1993). The Third Circuit held that a later affidavit submitted by an expert on Videon's behalf was properly introduced, even though it flatly contradicted the earlier deposition and characterized the surcharge as an advertising fee. *Id.* at 488. The court distinguished the outcomes in *Martin* and *Hackman* on the basis of the "clear and extreme" facts of those earlier cases. The court continued, "[h]ere, Mr. Videon's deposition testimony was ambiguous and it does not appear that he intended it to go to the ultimate legal issue. It thus cannot fairly be said that Mr. Ten Eyck's affidavit improperly impeached Mr. Videon's earlier deposition testimony." *Id.* In light of *Videon Chevrolet, Inc.,* it appears that judicial estoppel should not apply where a party most likely was confused or did not intend to address an ultimate legal issue such as the characterization of a surcharge.

■ We find that the present dispute between Wise and Bracy more closely resembles *Videon Chevrolet, Inc.* rather than *Martin* and *Hackman.* Although Wise has not alleged confusion at the time it provided its answers to Bracy's interrogatories, it has attempted to explain the inconsistency by pointing to a later deposition of its President Barbara O'Connell. She explained that as of September 12, 2000, despite the acknowledgment of substantial completion, Wise had also noted in its answers that a significant amount of work remained on the construction project. We find further that judicial estoppel is not warranted here because Wise has not previously relied on the disputed interrogatory answer to its advantage in any judicial proceeding past or present. In fact the answer was prepared in the context of the present litigation and well after both Wise and Bracy had recognized the existence of their dispute involving the concrete retaining wall. It is hard to see how Wise would have meant to characterize the ultimate legal issue of performance in a manner fatal to its claim when answering an interrogatory. We are therefore not concerned that consideration of Barbara O'Connell's later deposition will undermine the integrity of the judicial process.

Denial of National Fire's Motion for Summary Judgment, at least in part, is also supported by the terms of the Construction Contract, as incorporated by the Bond. The agreements between the parties define substantial completion in detail. We reproduce several of the more significant conditions below.

"Substantial completion" shall be defined as:

1. "The premises being complete including the building being completely finished (excluding minor punch list items)."

. . .

5. The final or temporary 'Certificate of Occupancy' having been issued by South Whitehall Township.

. . .

7. Acceptance of the entire premises by the VA such that the entire rent shall be payable and all lump sum payments due shall be payable by the VA with no hold backs for unfinished items, punch lists or non working equipment. . . .

(Pl.'s Compl., Ex. A, Supplemental Conditions to Article 3, ¶ 3.2). From the record we cannot find that no genuine issue of material fact exists with respect to the fulfillment of these conditions as of September 12, 2000. But regardless of whether Bracy had achieved substantial completion as of that date, the Construction Contract provides that Bracy's performance obligations do not cease on the day of substantial completion. Article 23 of the Construction Contract, entitled "Correction of Work," states as follows:

> The Contractor shall promptly correct Work rejected by the Architect or failing to conform to the requirements of the Contract Documents, *whether observed before or after Substantial Completion,* . . . and shall correct any Work found to be not in accordance with the requirements of the Contract Documents *within a period of one year from the date of Substantial Completion.*

(Pl.'s Compl., Exs. A & B, Art. 23) (emphasis added). Even if Wise admitted that substantial completion occurred by September 12, 2000, it gave notice to National Fire of Bracy's alleged default by December 27, 2000 at the latest, within one year from the date of substantial completion. Under the terms of the contract, obligations to perform were contemplated up to one year from the date of substantial completion.

We accordingly decline to exercise judicial estoppel to the subsequent deposition offered by Wise, contrary to the arguments offered by National Fire.

## C. Extent of National Fire's Liability Under the Terms of the Bond

The parties dispute the extent of National Fire's liability under the terms of the Bond. Specifically, they disagree as to whether National Fire is obligated to pay for all of Wise's claims against Bracy, including liquidated damages and attorneys' fees. Having considered the relevant precedent cited by the parties, we find as a matter of law that National Fire is obligated to pay only the costs of performance, not all claims Wise may have against Bracy under the Construction Contract. To the extent that Wise seeks to recover on such additional claims, we grant summary judgment for National Fire. We set forth our reasoning below.

### 1. Plaintiff Wise's Position

 Wise maintains that a surety is required to pay an obligee liquidated damages for which the principal is liable. As its sole authority for this contention, it cites *United States v. American Employers Insurance Co.,* 141 F.Supp. 281 (E.D.Pa.1956).

### 2. Defendant National Fire's Position

National Fire argues that its obligation under the Bond is to pay the costs of completion for the construction project, not all damages Wise may claim against Bracy under the contract documents. It relies primarily on *Downingtown Area School District v. International Fidelity Insurance Co.,* 769 A.2d 560, (Pa. Commw.Ct.2001), appeal denied, 567 Pa. 731, 786 A.2d 991 (2001).

### 3. National Fire is Obligated to Pay Only the Costs of Performance

Pennsylvania law clearly establishes that "[a] bond given pursuant to a contract incorporated in the bond will construed in

the light of the terms of the contract and the attendant circumstances, but the obligation of a bond cannot be extended beyond the plain import of the words used." *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15, 17 (1960) (internal quotations omitted). "Obligations not imposed by the terms of the bond cannot be created by judicial construction or interpretation which extends the terms beyond their normal meaning." *Id; see also Pepka v. Schang,* 704 A.2d 127, 130 (Pa.Super.Ct.1997); *Lezzer Cash & Carry, Inc. v. Aetna Ins. Co.,* 371 Pa.Super. 137, 537 A.2d 857, 861 (1988); *Nicholson Const. Co. v. Standard Fire Ins. Co.,* 760 F.2d 74, 77 (3d Cir.1985); *N. Am. Specialty Ins. Co. v. Chichester Sch. Dist.,* 158 F.Supp.2d 468, 471 (E.D.Pa.2001).

The most recent opinion from a Pennsylvania appellate court regarding the extent of liability under a performance bond is *Downingtown Area School District v. International Fidelity Insurance Co.,* 769 A.2d 560, (Pa.Commw.Ct.2001), appeal denied, 567 Pa. 731, 786 A.2d 991 (2001). In *Downingtown,* a school district contracted to have an elementary school built by Kern, the general contractor. The contract itself provided that Kern would be liable for liquidated damages for delay and other consequential losses. To ensure completion of the project, Kern gave the district a performance bond provided by its surety, International Fidelity Insurance Company, with terms materially the same as the Bond at issue here. 786 A.2d at 561–62. When Kern stopped work on the project, the school district formally declared it to be in default and sought delay damages, liquidated damages, and attorneys' fees from the surety. The Commonwealth Court held that because the performance bond did not specifically obligate the insurance company to cover all claims arising under the construction contract, coverage was limited to the precise terms of the bond. Specifically, the district could only recover the costs of completion of the project. *Id.* at 566. The court noted that its decision was not affected by a clause incorporating the terms of contract into the performance bond. *Id.* at 566 n. 13 ("[T]his clause 'only sets out the condition of [the surety's] liability rather than the scope of that liability.'") (citations omitted).

Because Pennsylvania's highest court has spoken authoritatively on the issue before us, we find that National Fire is obligated to pay only the costs of performance as provided by the Bond, not all claims Wise may have against Bracy such as liquidated damages and attorneys' fees. We reiterate that the terms of the Bond are materially the same, if not exactly the same, as the terms considered by the lower state appellate court in *Downingtown.* And here, a similar dispute exists between the surety of a contractor and an obligee over the extent of the surety's obligation. Most importantly, we agree with National Fire's position because the Bond by its own terms applies only to Bracy's performance. It does not contemplate coverage of liquidated damages or additional claims available under the terms of the Construction Contract.

Our decision is unaffected by *United States v. American Employers Insurance Co.,* 141 F.Supp. 281 (E.D.Pa.1956), cited by Wise. That case predates the Pennsylvania Supreme Court's decision in *Peter J. Mascaro Co. v. Milonas,* 401 Pa. 632, 166 A.2d 15, 17 (1960) ("[the] obligation of a bond cannot be extended beyond the plain import of the words used"), and to the extent that it contradicts the state law case we may not apply it in this diversity suit.

Based on the preceding discussion, to the extent that Wise seeks recovery be-

yond the terms of the Bond, we will grant summary judgment for National Fire.

### D. Wise's Alleged Failure to Meet Its Obligations Under the Bond

■ The terms of the Bond provide that Wise may declare Bracy in default if Wise has performed its obligations under the Construction Contract as they come due. (Pl.'s Compl., Ex. C, 2). National Fire argues it is entitled to summary judgment because Wise acknowledged that it was unable to make payments to Bracy. (Def.'s Mot. for Summ. J., Ex. E). National Fire characterizes this acknowledgment as an admission by Wise that it failed to perform its obligations under the contract. In opposition to National Fire's Motion for Summary Judgment, Wise claims it was unable to make payments to Bracy as they had agreed because of Bracy's default. Wise claims that it incurred additional expenses when it was forced to hire replacement contractors to perform work originally scheduled for Bracy to complete; consequently, any financial difficulties suffered by Wise resulted from Bracy's failure to fulfill its obligations under the terms of the Construction Contract and Alternate Wall Agreement. Because we are considering a motion for summary judgment, all inferences must be drawn and all doubts resolved in favor of the nonmoving party. Therefore, judgment for National Fire is not merited based on Wise's alleged failure to meet its obligations, if that failure was brought about by Bracy's own nonperformance. A disputed issue of fact exists as to which party first breached its obligations under the Construction Contract and Alternate Wall Agreement.

### E. Failure to Name National Penn Bank as a Party to the Lawsuit

National Fire argues that the failure to include National Penn Bank, a joint obli-

gee with Wise on the Bond, in the present action "should invalidate Wise's claim." We assume National Fire is suggesting that National Penn Bank is a necessary or indispensable party, although National Fire does not mention Fed.R.Civ.P. 19 or any other authority on this issue in its memorandum of law. Beyond its unsupported arguments, National Fire has not demonstrated that the absence of National Penn Bank from the litigation will subject it to multiple claims as it suggests. Considering the substantial value of the property where the VA clinic is located, the risk of double, multiple, or inconsistent claims against National Fire is speculative at best. *See N. Am. Specialty Ins. Co. v. Chichester Sch. Dist.,* No. Civ.A.99–2394, 2000 WL 1052055, at *24–*25 (E.D.Pa. Jul.20, 2000); *Kerrigan v. Villei,* No. Civ. A.95–4334, 1996 WL 84271, at *2–*3 (E.D.Pa. Feb.28, 1996).

Accordingly, we deny summary judgment based on the failure to include National Penn Bank as a party.